KELLUM, Judge.
Renard Tucker appeals the circuit court’s dismissal of his petition for a writ of certiorari, in which he challenged the August 2013 decisions by the Alabama Board of Pardons and Paroles (hereinafter “the Board”) to deny him parole and to reset his parole consideration for August 2018.
In 1993, Tucker was convicted of felony murder and was sentenced to life imprisonment. In August 2013, Tucker was, for the fourth time, denied parole by the Board. Upon denying. Tucker parole, the Board reset Tucker for parole consideration in August 2018.
On January 14, 2015,. Tucker filed his petition for a writ of certiorari challenging the Board’s August 2013 decisions to deny him parole and to reset his parole consideration for August 2018. In his petition, Tucker alleged: (1) that the Board’s decision to deny him parole was arbitrary and capricious; and (2) that the Board violated the Ex Post Facto Clause of the United States Constitution when it set his next parole consideration date for August 2018 based on parole rulés that were not in effect at the time he was convicted and sentenced. On February 26, 2Ó15, the Board filed a motion to dismiss Tucker’s petition, arguing that Tucker’s claims were meritless. That same day, the circuit court granted the Board’s motion and dismissed Tucker’s petition.
On appeal, Tucker reasserts the two claims raised in his petition and argues that the circuit court erred in denying his petition. We disagree.
. “ ‘On petition for writ of certiorari the circuit court is, as is the appellate court, limited in its review of quasi-judicial acts of administrative officers and boards. The limited function of that review is to determine whether the act in question was supported by any substantial evidence, or whether findings and conclusions are contrary to uncon-tradicted evidence, - or 'whether there was an improper application of the find *716 ings viewed in a legal sense. Sanders v. Broadwater, 402 So.2d 1035 (Ala.Civ.App.1981). Judicial review of administrative acts and decisions is limited in scope, and ordinarily the courts will only pass on the question of whether the administrative agency has acted within its constitutional or statutory powers, whether its order or determination is supported by substantial evidence, and whether its action is reasonable and not arbitrary. Little Caesar’s, Inc. v. Alabama Alcoholic Beverage Control Bd., 386 So.2d 224 (Ala.Civ.App.1979).’ ”
Alabama Bd. of Pardons & Paroles v. Williams, 935 So.2d 478, 484 (Ala.Crim.App.2005) (quoting Ellard v. State, 474 So.2d 743, 750 (Ala.Crim.App.1984)). “A court may not set aside an order of a fact-finding administrative body, acting within the field of its designated powers, unless the order is illegal, capricious, or unsupported by substantial evidence.” Ellard, 474 So.2d at 750.
Moreover, “an inmate has no liberty interest in parole; thus, due-process rights do not attach to the denial of parole, but only to the revocation of parole.” Alabama Bd. of Pardons & Paroles v. Wright, 37 So.3d 842, 843 (Ala.Crim.App.2009). As this court explained in Andrus v. Lambert, 424 So.2d 5 (Ala.Crim.App.1982):
“The right to a parole is a privilege granted by the people of Alabama to those committed to our penal institutions as punishment for crimes. Holley v. State, 397 So.2d 211, 216 (Ala.Crim.App.), cert. denied, 397 So.2d 217 (Ala.1981). Obtaining an early release through parole, like obtaining a pardon, is wholly contingent upon either the grace of the detaining authority or some affirmative statutory entitlement. United States v. Chagra, 669 F.2d 241, 264 (5th Cir.1982). While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, Greenholtz v. Nebraska, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979), a prisoner has the right to be properly considered for parole. Christopher v. U.S. Board of Parole, 589 F.2d 924 (7th Cir.1978); Wallace v. Turner, 525 F.Supp. 1072 (S.D.Fla.1981). The paroling authority must comply with constitutional requirements and may not determine parole eligibility on improper grounds. Wallace v. Turner, supra. A parole should not be denied for false, insufficient, or capricious reasons. Christopher, supra.”
424 So.2d at 9.
Bearing in mind these principles, we address each of Tucker’s claims in turn.

I.

• Tucker first reasserts on appeal the claim raised in his petition that the Board’s decision to deny him parole was arbitrary and capricious.
First, Tucker argues, as he did in his petition, that the Board’s decision to deny him parole was arbitrary and capricious because, he says, the Board failed to provide him the' reason for the denial. Section 15-22-36(b), Ala.Code 1975, provides:
“Each member of the Board of Pardons and Paroles favoring a pardon, parole, remission of a fine or forfeiture, or restoration of civil and political rights shall enter in the file his or her reasons in detail, which entry and the order shall be public records, but all other portions of the file shall be privileged.”
(Emphasis added.) However, § 15-22-36(b) speaks only to instances in which parole is “favored.” “There is no statutory requirement that a Board , member detail his reasons for denying parole.” Tedder v. *717 Alabama Bd. of Pardons & Paroles, 677 So.2d 1261, 1264 (Ala.Crim.App.1996) (emphasis added). Therefore, this argument is meritless.
Second, Tucker argues, as he did in his petition, that the Board’s decision to deny him parole was arbitrary and capricious because, he says, his family told him that the Board denied him parole based on his numerous prison-disciplinary infractions. Tucker maintains, however, that he “has witnessed the board release numerous of inmates with twice as many disciplinaries” and that, therefore, the Board’s reasons for denying him parole were “false and insufficient.” (Tucker’s brief, p. 5.)
Initially, we point out that Tucker admitted in his petition, and admits in his brief on appeal, that the Board did not provide any reasons for denying him parole. Tucker cannot argue that the Board’s reasons for denying him parole were “false and insufficient” while simultaneously arguing that the Board’s decision should be reversed because it did not provide reasons for denying him parole. Moreover, nothing in the record supports Tucker’s bare assertion that the Board denied him parole because of his prison-disciplinary infractions. Rather, the Board’s written denial of parole, which the Board attached to its motion to dismiss, contains no comments or reasons for the denial of Tucker’s parole.
That being said, to the extent that Tucker is attempting to argue that the Board’s decision to deny him parole denied him equal protection of the law because other inmates who had more disciplinary infractions than Tucker has have allegedly been granted parole, that argument is meritless.
“ ‘The basic tenet of the equal protection clause is not that all persons must be treated equally, but rather that all persons similarly situated must be treated equally.’ Smith v. State, 518 So.2d 174, 176 (Ala.Crim.App.1987). ‘“[Separate treatment of defendants does not violate any constitutional guar- . antee of equal protection so long as that treatment is reasonable and founded on a rational basis.” ’ Carroll v. State, 599 So.2d 1243, 1244 (Ala.Crim.App.1992), quoting Wheatt v. State, 410 So.2d 479, 484 (Ala.Crim.App.1982). ‘“[A] defendant who alleges an equal protection violation has the burden of proving ‘the existence of purposeful discrimination.’ ” ’ Facion v. State, 627 So.2d 1144, 1145 (Ala.Crim.App.1993), quoting McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).”
Robinson v. State, 865 So.2d 457, 472 (Ala.Crim.App.2003). As this Court explained in Ellard, supra:
“The guaranty of equal protection of the law means that no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in like circumstances. 16A Am.Jur.2d, Constitutional Law, § 727 (1979).
“The constitutional guaranty of equal protection of the law requires that all persons shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. The equal protection clause does not forbid discrimination with respect to, things that are different. The test is whether the difference in treatment is an invidious discrimination. City of Hueytown v. Jiffy Chek Co., 342 So.2d 761 (Ala.1977); 16A Am.Jur.2d, Constitutional Law, § 738 (1979). The purpose of the equal protection clause of the- Fourteenth Amendment is to protect every.person .within the state’s jurisdicr tion against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its *718 improper execution through duly constituted agents. 16A Am. Jur.2d, Constitutional Law, § 802 (1979).”
474 So.2d at 753.
Tucker made only a bare and conclusory allegation that the Board has granted parole to other inmates who had more prison-disciplinary * infractions than he did. However, he failed to establish, or even to allege, that he was similarly situated to those other inmates who had been granted parole, much less that the denial of his parole was the result of purposeful discrimination. Therefore, this argument is meritless.
Furthermore, to the extent that Tucker is attempting to argue that the Board’s decision to deny him parole was based on false information regarding his prison-disciplinary infractions, that argument, too, is meritless. The Alabama Supreme Court has held: “Section 15-22-26[,-Ala.Code 1975] is a typical parole statute that gives the parole board total discretion in the granting of paroles.’’ Thompson v. Bd. of Pardons & Paroles, 806 So.2d 374, 375 (Ala.2001). As an exception to the Board’s otherwise total discretion in granting or denying parole, an inmate can prevail on a claim that the Board’s denial of parole'was arbitrary and capricious if the inmate establishes that the Board engaged in “flagrant or unauthorized” actions, such as knowingly relying on admittedly false information. Tedder, 677 So.2d at 1263 (citations omitted). In Monroe v. Thigpen, 932 F.2d 1437 (11th Cir.1991), the United States Court- of Appeals for the Eleventh Circuit held that the Board’s knowing reliance on admittedly false information to deny an inmate parole was arbitrary and capricious. This Court has followed- the holding- in Monroe v. Thigpen; however, we have made it clear that “mere allegations in a petition for a writ of certiorari that the Board relied on false information are not sufficient” - to state a claim for relief. Henley v. Alabama Bd. of Pardons & Paroles, 849 So.2d 255, 261 (Ala.Crim.App.2002). Additionally, this Court has held that the Monroe v. Thigpen exception to the Board’s virtual unfettered discretion in granting or denying parole applies only when the . Board relies on information it knew to be false and admits its reliance on such false information. See Henley, 849 So.2d at 261; and Hill v. State, 594 So.2d 246, 248 (Ala.Crim.App.1992).
In the instant case, Tucker made only conclusory allegations that the reason the Board denied him parole was he had prison-disciplinary infractions. As noted above, the record does not support that assertion. Moreover, Tucker admitted in his petition that he had “numerous of major disciplinarles while incarcerated.” (C. 5.) Therefore, even if the Board did deny Tucker parole based on. information relating to his prison-disciplinary infractions, Tucker has , admitted that that information was accurate. Therefore, this argument is meritless.-
II.
Tucker also reasserts on appeal the claim raised in his petition that the Board violated the Ex Post Facto Clause of the United States Constitution when it set his next parole consideration date for August 2018, five years -after the August 2013 denial of parole. Specifically, Tucker argues, as he did in his petition, that the parole consideration date should have been set no later than three years from the date of the denial of parole pursuant to the Board’s operating procedures that were in effect at the time of his conviction, rather than five years from the date of the denial of parole pursuant to the Board’s operating procedures that were in effect at the time his parole was denied in August 2013.
*719 Initially, we point out that the Board’s operating procedures are not contained in the record before this Court. “We will not predicate error on a silent record.” Minor v. State, 914 So.2d 372, 417 (Ala.Crim.App.2004). See also Robinson v. State, 444 So.2d 884, 885 (Ala.1983) (“A reviewing court cannot predicate error on matters not shown by the record.... Indeed, a silent record supports a judgment.”); and Owens v. State, 597 So.2d 734, 736 (Ala.Crim.App.1992) (“[T]his court cannot predicate error on matters not shown by the record, nor can we presume error from a silent record.”), Nonetheless, based on the parties pleadings, it is clear that Tucker is due no relief.
The record indicates that, the Board’s operating procedures at the time Tucker committed his crime provided that when an inmate was denied parole, the inmate’s next parole consideration' date would be scheduled within three years after the denial of parole. After Tucker was convicted and sentenced, the Board changed its procedures to provide that when an inmate was denied parole, the inmate’s next parole consideration date would be scheduled within five years after the denial of parole. The new procedures also provide a mechanism for inmates to request- earlier parole reconsideration after denial. "When resetting Tucker’s parole consideration for five years after the August 2013 denial of parole, the Board applied its new procedures to Tucker.
In California Department of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), the . Supreme Court of the United States rejected an argument similar to the one presented by Tucker. Jose Ramon Morales was denied parole, and his parole consideration was reset for three years after "the denial of parole based on a change in California’s parole-laws that-occurred, after Morales had committed his crime. At the time of Morales's crime, California’s parole law provided that-an inmate would be considered for parole yearly. Subsequent to Morales’s conviction, California decreased the frequency of parole consideration from yearly to every three years for certain inmates. Morales challenged the resetting of his -parole consideration for three years after the denial of his paróle based on the change in law as a violation of the Ex Post Facto Clause of the United States Constitution. The United States-Supreme. Court rejected Morales’s argument, holding that the change in law-did not change “the sentencing range applicable to covered crimes [but] simply ‘alter[ed] the method to be followed’ in fixing a parole release date under identical substantive standards.” Morales, 514 U.S. at 508. The Court held that the controlling inquiry was whether the -retroactive application of the change in law “produce[d] a sufficient risk of increasing the ’measure of punishment attached to the covered crimes,” 514 U.S. at 509, and it concluded that the decrease in frequency of parole consideration “created] only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes” and, thus, did not, violate the Ex Post Facto Clause. 514 U.S. at 514.
Subsequently, the' Court applied its holding in Morales to a change in Georgia’s rule regarding the frequency of parole Consideration. See Garner v. Jones, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Robert Jones was denied parole, and his parole consideration was reset for eight years after the denial of parole leased on a change in Georgia’s parole rules that occurred after Jones had committed his crime. At the time of Jones’s crime, Georgia’s parole rules provided that an inmate would be considered for parole at least every three years. Sub *720 sequent to Jones’s conviction, Georgia decreased the frequency of parole consideration from at least every three years to at least every eight years for certain inmates. Jones challenged the resetting of his parole consideration for eight years after the denial of his parole based on the change in rules as a violation of the Ex Post Facto Clause of the United States Constitution. The United States Supreme Court rejected Jones’s argument, holding that applying the change in Georgia’s parole rules to Jones retroactively did not create a significant risk of increased punishment to Jones. The Court held that the Morales standard required a “rigorous analysis” of the level of risk of increased punishment to the inmate and that “[w]hen the rule does not by its own terms show a significant risk, the [inmate] must demonstrate, by evidence drawn from the rule’s practical implementation by the agency charged with exercising discretion, that its retroac-. five application will result in a longer period of incarceration than under the earlier rule.” Garner, 529 U.S. at 255.
In this case, the record does not support Tucker’s claim that the Board’s applying its change in operating procedures to him retroactively will result in a longer period of incarceration than under the previous procedures. Moreover, any argument that he might be paroled if considered before his next parole consideration date is speculative and attenuated. Therefore, Tucker’s ex post facto challenge is meritless.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.